COURT OF APPEALS OF VIRGINIA

Present: Judges McClanahan, Haley and Petty
Argued at Chesapeake, Virginia


ANTHONY DAVID McDONALD

MEMORANDUM OPINION[*] BY
v.        Record No. 2320-07-1            JUDGE WILLIAM G. PETTY
                                              DECEMBER 9, 2008
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF SUFFOLK
Rodham T. Delk, Jr., Judge

David W. Cassidy, Assistant Public Defender, for appellant.

Craig W. Stallard, Assistant Attorney General (Robert F. McDonnell,
Attorney General; Karri B. Atwood, Assistant Attorney General, on brief),
for appellee.


Following a bench trial, Anthony David McDonald was convicted of one count of

embezzlement in violation of Code §§ 18.2-111 and 18.2-95. McDonald argues on appeal that

the evidence was insufficient to prove beyond a reasonable doubt that he committed

embezzlement. For the following reasons, we disagree and affirm McDonald's conviction.

I. BACKGROUND

"On appeal, we view the evidence in the light most favorable to the Commonwealth, the

party prevailing below, giving it all reasonable inferences fairly deducible from the evidence."

Bowling v. Commonwealth, 51 Va. App. 102, 104, 654 S.E.2d 354, 355 (2007) (citing Ragland

v. Commonwealth, 16 Va. App. 913, 915, 434 S.E.2d 675, 676-77 (1993)). McDonald worked

as a sales associate at a 7-Eleven convenience store in Suffolk, Virginia. He was responsible for

"ringing up sales, . . . sweeping, mopping, making coffee, brewing items, [and] keep[ing] the

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

store running." McDonald was also responsible for printing and selling money orders. When a money order was entered in the register it "automatically [told] the money order machine to print out a [five hundred dollar] money order, or whatever denomination you put in there." The sales associate making the sale was responsible for depositing the cash from the sale into the safe. The safe was described as "a soda machine; you feed [money] into a sifter and it counts the number of [twenties], [tens] and such forth." Each sales associate had his own employee number, which was password-protected, and a personal identification code. Any money put into the safe was logged under that employee's number.

As of February 5, 2007, McDonald had only worked at 7-Eleven for "barely two weeks" and this was the first time he worked "unattended" by a manager. Angela Silverthorn, the store manager, noticed that on February 5, 2007, McDonald's register total was one thousand dollars more than the amount he deposited in the safe. Silverthorn suspected that the one thousand dollar deficiency was a result of a money order so she compared the Money Order Balancing Report[1] to the Safe Report.[2] Silverthorn testified that McDonald printed several money orders but he did not deposit cash for two of them. The two money orders for which McDonald had not deposited cash into the safe were prenumbered 086115549554 and 086115549563[3] and

_____

[1] The Money Order Balancing Report indicates the shift, register, employee, transaction time, and dollar amount of every money order sold. The Money Order Balancing Report was entered into evidence by the Commonwealth and included in the record.

[2] The Safe Report indicates all of the employee's deposits and the time of those deposits. The Safe Report was admitted into evidence by the Commonwealth and included in the record.

[3] McDonald argues that it is "strange" that these two money orders were printed simultaneously and yet they are nine digits apart. We do not find any irregularity in the interval between the money orders because the Money Order Balancing Report indicates that none of the printed money orders were printed in sequential order. In fact, with only a few exceptions, one can almost discern a pattern that the preprinted serial numbers are all nine digits apart.

amounted to five hundred dollars each for a total of one thousand dollars.  Both money orders

were printed from McDonald's register at 1:56:48 p.m. as part of the same transaction.

The Commonwealth introduced still photographs that were taken from the video camera

located in the store.  Silverthorn testified to the following:

> So we looked at the video and we see that [McDonald's] there at
> the register.  There's nobody in front of him.  He's on the register
> pointing his fingers.  He turns to the money order machine, grabs
> the money orders, walked off.  And this was his first time that he
> was unattended by a level of management in the store.

When asked by Silverthorn if he knew why his register rang up short, McDonald said that

he did not know and he could not tell her where the money was.  Later, Detective Gonzalez, of

the Suffolk Police Department, testified to the following conversation with McDonald:

| | |
|---|---|
| Question: | "On the same date, did you sell money orders number 086115549554 and number 086115549563 for the sums of $500 each at approximately 1:56 p.m.?" |
| Answer: | "I'm not sure, but I'm pretty sure that I did." |
| Question: | "Do you recall who those money orders were sold to?" |
| Answer: | "No, I don't." |
| Question: | "Were they sold to the same person?" |
| Answer: | "I don't know." |
| Question: | "The money order sheet received from 7-Eleven managers showed that there were several money orders sold before and after this alleged transaction, and that all the money was accounted for.  Why are the two $500 missing?" |
| Answer: | "I don't know.  When they first found them missing I stayed to help - - to find out where the missing money was." |
| Question: | "Did you take two money orders from the store in the amount of $500 each without paying for them?" |

- 3 -

Answer:      "No."

Question:    "Did you allow someone else to exit the store with
             two money orders in the amount of $500 each
             without paying for them?"

Answer:      "No."

Question:    "Do you have any idea where the missing money
             orders went?"

Answer:      "No."

The trial court found that "there were no other employees in the store" and the "money orders were printed . . . on [McDonald's] employee number." The trial court concluded that this evidence was "sufficient in the mind of the [c]ourt to prove beyond a reasonable doubt that Mr. McDonald committed the embezzlement." The trial court convicted McDonald of one count of embezzlement.[4] It is from this judgment that McDonald appeals.

## II. ANALYSIS

"When considering the sufficiency of the evidence presented below, we presume the judgment of the trial court to be correct and reverse only if the trial court's decision is plainly wrong or without evidence to support it." Kelly v. Commonwealth, 41 Va. App. 250, 257, 584 S.E.2d 444, 447 (2003) (*en banc*) (internal quotation marks and citations omitted); see Code § 8.01-680. It is well established that when the Commonwealth "undertakes to prove the guilt of the accused by circumstantial evidence, . . . it must overcome the presumption of innocence and establish guilt beyond a reasonable doubt." Webb v. Commonwealth, 204 Va. 24, 34, 129 S.E.2d 22, 29 (1963). Thus, "[a]ll necessary circumstances proved must be consistent with guilt and inconsistent with innocence." Id.

---

[4] Initially, McDonald was charged with two counts of embezzlement for each money order taken. However, the trial court concluded that both money orders were printed "literally simultaneously" and that "[i]t's one transaction for all practical purposes." Thus, the trial court found McDonald guilty of only one count of embezzlement.

To constitute the statutory crime of embezzlement, the Commonwealth must prove beyond a reasonable doubt that McDonald "wrongfully appropriated to his own use or benefit, with intent to deprive the owner thereof, the property of another which has been entrusted to him by reason of his employment." Id. at 34, 129 S.E.2d at 30; Code § 18.2-111.[5]  In applying these elements, our Supreme Court has recognized that "[w]hile proof that property . . . has been misappropriated is not enough, standing alone, to prove that the accused was the embezzler, where . . . there is additional evidence . . . show[ing] that the accused acted with the requisite criminal intent and that his conduct was designed to conceal his criminal purpose," the evidence is sufficient to convict for embezzlement.  Smith v. Commonwealth, 222 Va. 646, 652, 283 S.E.2d 209, 212 (1981) (holding that the evidence was sufficient to convict Smith of embezzlement); accord Waymack v. Commonwealth, 4 Va. App. 547, 549, 358 S.E.2d 765, 766 (1987) (reversing the defendant's conviction and noting the absence of evidence that she attempted to conceal her allegedly criminal activity and the absence of evidence supplying criminal intent).

McDonald argues on appeal that the "store video only showed an unidentifiable person standing behind the counter.  It did not show that person making any transaction or removing anything from the money order machines."  Thus, McDonald argues that the evidence is not sufficient to prove that the "money orders were actually taken, and if taken, only raises a suspicion that the defendant took them."  We disagree.  We believe that a rational trier of fact

---

[5] Code § 18.2-111 provides that

> If any person wrongfully and fraudulently use, dispose of, conceal or embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other personal property, tangible or intangible, which he shall have received . . . by virtue of his office, trust, or employment, . . . he shall be deemed guilty of embezzlement.

could find that McDonald wrongfully and fraudulently printed, and misappropriated for his own benefit, two money orders worth five hundred dollars each.

A combination of direct and circumstantial evidence supports the trial court's conclusion. Silverthorn testified that the store video showed McDonald print the money orders, grab them, and walk off. While we agree with McDonald that the still photographs taken from the store video[6] were unclear, the testimony of Silverthorn as to what she saw on the video was not. The absence of a corresponding cash deposit on the Safe Report after the money orders were printed is further evidence supporting a hypothesis of guilt. So too is the absence of a customer at the cash register at the time. When confronted by the store manager the next day all McDonald could offer as an explanation regarding the missing money orders was a feeble "I don't know." Finally, while under no obligation to speak with Detective Gonzalez, McDonald voluntarily chose to do so, telling Gonzalez that he was "pretty sure" he had sold the money orders, but could not remember to whom they were sold nor where they went.

The trial court obviously rejected McDonald's professed lack of knowledge regarding the missing money orders. Our Supreme Court has stated "a fact-finder, having rejected a defendant's attempted explanation as untrue, may draw the reasonable inference that his explanation was made falsely in an effort to conceal his guilt." Covil v. Commonwealth, 268 Va. 692, 696, 604 S.E.2d 79, 82 (2004). "A false or *evasive* account is a circumstance, similar to flight from a crime scene, that a fact-finder may properly consider as evidence of guilty knowledge." Id. (emphasis added). Further, we have recognized that a factfinder may "draw reasonable inferences from basic facts to ultimate facts," Barnes v. Commonwealth, 47 Va. App. 105, 110 n.1, 622 S.E.2d 278, 280 n.1 (2005) (citation omitted), unless doing so would push

---

[6] The video itself was not admitted into evidence because it was recorded at a speed that does not play on a regular videocassette recorder.

"into the realm of *non sequitur*," <u>Thomas v. Commonwealth</u>, 48 Va. App. 605, 608, 633 S.E.2d 229, 231 (2006) (citation omitted). Here, the trial court clearly found that McDonald's professed inability to provide any explanation regarding the money orders was deceptive. Because the trial court found his statements to be false, the court was entitled to draw a reasonable inference that McDonald denied knowledge of the crime in order to conceal his guilt. The trial court was entitled to consider this as additional affirmative evidence of guilt.

Contrary to McDonald's argument, the evidence here goes well beyond merely suggesting that property was misappropriated and the defendant had the opportunity to misappropriate it. The only reasonable conclusion to be drawn from all of these facts is that McDonald wrongfully and fraudulently printed, and misappropriated for his own benefit, the two money orders. The trial court "rejected [McDonald's] hypothesis as unreasonable" and "that determination cannot be overturned as arbitrary unless no rational factfinder would have come to that conclusion." <u>Haskins v. Commonwealth</u>, 44 Va. App. 1, 9, 602 S.E.2d 402, 406 (2004). Therefore, we conclude that the evidence was sufficient to convict McDonald of embezzlement and we affirm his conviction.

## III. CONCLUSION

For the foregoing reasons, we affirm McDonald's conviction.

<u>Affirmed.</u>